| | | |
|---|---|---|
| ANTHONY CORDELL WILLIAMS | § | |
| | § | |
| PLAINTIFF | § | CAUSE OF ACTION |
| | § | FOR DAMAGES / |
| | § | COMPLAINT |
| VS. | § | |
| | § | |
| | § | CIVIL ACTION NO. |
| TEXAS ATTORNEY GENERAL, | § | |
| TEXAS BOARD OF PARDONS | § | |
| AND PAROLES, TEXAS CRIMINAL | § | _____ |
| JUSTICE PAROLE DIRECTOR | § | |
| PAMELA THEILKIE, TEXAS | § | |
| PAROLE OFFICER JESSICA | § | |
| ABBOTT, TEXAS PAROLE | § | |
| OFFICER P. THOMAS | § | |

## PLAINTIFF'S 14TH AMENDMENT FEDERAL QUESTION COMPLAINT / CAUSE OF ACTION FOR DAMAGES UNDER 1871 CIVIL RIGHTS ACT / 42 U.S.C. SECTION 1983 TO ENFORCE THE PROVISIONS OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

**COMES NOW** ANTHONY CORDELL WILLIAMS, PLAINTIFF PRO SE

AND FILES THIS ORIGINAL ARTICLE III FEDERAL QUESTION 14TH

AMENDMENT DUE PROCESS COMPLAINT / CAUSE OF ACTION

FOR DAMAGES AGAINST THE TEXAS ATTORNEY GENERAL,

TEXAS BOARD OF PARDONS AND PAROLES, TEXAS CRIMINAL

JUSTICE PAROLE DIRECTOR PAMELA THIELKIE, TEXAS PAROLE

OFFICER JESSICA ABBOTT, TEXAS PAROLE OFFICER MR. P.

THOMAS, AND DEFENDANTS ET AL.

And the Plaintiff will respectfully show:

## JURISDICTION

This Honorable Federal District Court has Original Article III Jurisdiction

under Article III of the United States Constitution; Article IV Section 2;

Article VI, Section 2 and 3; the 1st, 4th, 5th, 7th, 8th, and 14th Amendments

of the United States Constitution; 1871 Civil Rights Act; 42 U.S.C. Section

1983; and 28 U.S.C. Section 2201, Declaratory Judgment Act Jurisdiction;

and Mandamus Jurisdiction.

## FEDERAL QUESTION

FEDERAL QUESTION: Is the Texas Court of Criminal Appeals [State law]

prospective only application of the Winship Constitutional Standard, In Re

Winship, 397 U.S. 358, S. Ct. 1068, 25 L.Ed.2d 368 (1970),   enforced and applied

within the matrix of the state criminal law in Geesa v. State, 820 S.W.2d 154, (Tex.

Cr. App.1991), inconsistent with / contrary to the United States Supreme Courts

Ivan V. vs. City of New York , 407 U. S. 203, 32 L. Ed. 2d 659, 90 S. Ct. 1951

(1972) Complete Retroactive Application of Winship, so as to violate the:

a). Supremacy Clause of the U.S. Constitution under Article VI

b). Article IV of the United States Constitution, Comity Clause

c). Fifth Amendment of the United States Constitution, and/or the

d). Fourteenth Amendment of the United States Constitution,

where the Federal District Court can take Jurisdiction in this case and enjoin further enforcement of the prospective only application of the Winship Constitutional Standard by a preliminary and permanent injunction against the state defendants, and issue a declaratory judgment against the state defendants, and award the plaintiff by a judgment compensatory and punitive damages under the United State Constitution and laws of the United States invoked herein where the plaintiff has suffered Constitutional injuries, personal injuries, and continues to suffer irreparable harm, injury and damage, as a consequent of the state defendants abuse of power, bad faith, knowing, intentional, negligent, deliberate and oppressive state actions under color of state law in this Complaint / Case of Action?"

## DISCOVERY

The plaintiff intends to conducting discovery under the Federal Rules of Civil Procedure et seq.

## PARTIES

## PLAINTIFF PARTY

Plaintiff, Anthony Cordell Williams, Plaintiff Pro Se, T.D.C.J.-I.D.#585666, is a born United States Citizen, and a citizen of the state of Texas. Plaintiff's mailing address is of Harris County, Texas, whose mailing address is: 945 Mc Kinney St. # 124, Houston, Texas, 77002.

## DEFENDANT PARTIES

Defendant, ATTORNEY GENERAL OF THE STATE OF TEXAS, Ken Paxton, is the State Representative of the state of Texas that conducts the business for the State of Texas. Service of process can be carried out at the following address: Ken Paxton, Attorney General of Texas, P.O. Box 12548, Capitol Station, Austin, Texas, 78711, telephone # 512-936-1400.

Defendant, Defendant, 263rd JUDICIAL DISTRICT CRIMINAL TRIAL COURT JUDGE JIM WALLACE,

Defendant, SECRETARY OF THE STATE OF TEXAS

Defendant, TEXAS COMPTROLLER

4

Defendant, TEXAS BOARD OF PARDONS AND PAROLES, DIRECTOR

Defendant, TEXAS CRIMINAL JUSTICE PAROLE DIVISION DIRECTOR PAMELA THEILKE,

Defendant, TEXAS CRIMINAL JUSTICE PAROLE OFFICER JESSICA ABBOTT, is a Houston, Texas, Texas Criminal Justice Parole Officer that the plaintiff was assigned to between, 2016 – 2018 and she is a defendant in this case. Service of process can be carried out at the following address: Jessica Abbott, 1616 East Freeway, Houston, Texas, 77020-6108, telephone # 713-650-8459.

Defendant, TEXAS CRIMINAL JUSTICE PAROLE OFFICER MR. P. THOMAS, is a Houston, Texas, Texas Criminal Justice Parole Officer that the plaintiff was assigned January 2018 and he is a defendant in this case. Service of process can be carried out at the following address: Jessica Abbott, 1616 East Freeway, Houston, Texas, 77020-6108, telephone # 713-650-8459.

## STATEMENT OF FACTS

The plaintiff claims that the plaintiff has suffered false imprisonment's, and unconstitutional incarceration's and 14th Amendment deprivation of liberty, and substantive and procedural due process of law in violation of the laws of the United States, as a result of the state defendant's knowing, intentional, deliberate, negligent, and oppressive, unconstitutional acts, and state action's, causing confinement or restraint of the plaintiff's person in violation of the laws invoked herein, e.g. confinement in jail, in the plaintiff's home, in the state of Texas, etc., and the restraint on the plaintiff's activities, i.e., the plaintiff can't travel interstate or abroad, can't leave the state of Texas, to go to the United States Supreme Court or the United States Department of Justice in Washington, D.C., etc., the plaintiff currently being unconstitutionally confined, held unconstitutionally under the custody and control of the state of Texas Board of Pardons and Paroles (Defendant) and the Texas Criminal Justice Parole Division Director Pamela Theilke (Defendant) mandatory supervision / parole certificate, rules, regulations, ordinances, laws, or articles of the Texas Legislature, pursuant to, the Texas Court of Criminal Appeals Geesa vs. State, 820 S.W. 2d 154, (Nov. 6th, 1991) "prospective application of the Winship Standard" enforced upon the plaintiff unconstitutionally, in this case, by the Texas Attorney General (Defendant), the

Texas Secretary of the State (Defendant), the 263rd Judicial District Criminal Trial Court Judge Jim Wallace (Defendant), the state of Texas Board of Pardons and Paroles (Defendant) and the Texas Criminal Justice Parole Division Director Pamela Theilke (Defendant), the Texas Criminal Justice Parole Officers Jessica Abbott and Mr. P. Thomas, and the Texas Comptroler (Defendant) and/or physically restrained against the plaintiff's will and without the plaintiff's consent, and without lawful qualification or justification in law or facts by the state defendant actors, through their unconstitutional state action done in bad faith under color of state law, upon the plaintiff in this case pursuant to the Geesa vs. State, state ciminal law, complained of herein. Their state actions under the color of state law, complained of involves the interference with, and infringement of the plaintiff's freedom, liberty / Constitutional Security, depriving the plaintiff of the Constitutional right to be at Liberty, free from physical restraint, without restriction, throughout the world. The unconstitutional confinement's and retraint's are unconstitutionally accomplished through the state actors enforcement, application, effect, operation, and use of physical barriers, physical restraints, and threats of physical force and violence against the plaintiff.

Thus, the plaintiff being unconstitutionally physically restrained, does not comply with the restraint willingly, and the plaintiff being unconstitutionally restrained

and deprived of his liberty in violation of the United States Constitution and laws, objects, opposes, and complains as the aggrieved party and does not agree to, or with the state defendants actions, depriving the plaintiff of, the right to be free from physical restraint, the right to liberty and the right to receive substantive and procedural  due process of the law, in this case as the plaintiff is entitled, and the plaintiff invokes the Federal District Court's Original Artricle  III Jurisdiction, Power and Authority and seeks the Federal District Court's intervention and aid in obtaining a declaratory judgment, a preliminary and permanent injunction, and a hearing and adjudication of the plaintiff's  meritorious claim for compensatory and punitive damages against the state defendant actors / state defendant parties sued herein, because the plaintiff has suffered and is continually being forced to suffer Constitutional injury, personal injury, damage, economic damage, and irreparable injury, where in this case, under state law, there is no adequate remedy at law, and here in this case presented by the plaintriff against the strate defendants, there is a actual, live, acute, concrete,  real, present, substantial and immediate "National 14th Amendment Substantive Due Process" justiciable controversy, between the parties, having adverse legal interests within the enforced National 14th Amendment Substantive Due Process Constitutional Criminal Winship Law, of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment, by a three Judge Court, in favor of the plaintiff against the state defendants, under

the Declaratory Judgment Act, 28 U.S.C. Section 2201, invoked herein, where as here, the Texas Court of Criminal Appeals, [1991], "prospective application of the In re Winship Standard" enforced under the state criminal law, upon the plaintiff, within Geesa vs. State, supra, as complained of by the plaintiff,   is pre-empted by the United States Supreme Court [1972] Ivan V. vs. City of New York, 92 S. Ct. 1952 "complete retroactive application of the guaranteed substantive Constitutional fundamental 14th Amendment   "Winship" Criminal Law Standard." Thus, the state criminal.

## THE PLAINTIFF HAS COMPLAINED TO THE STATE DEFENDANTS

Plaintiff argues that the "Article III case or controversy" concerning the plaintiff's challenge to the Geesa vs. State, state   non-retroactive criminal law reasonable doubt doctrine litigation has not been kept from the state defendants, but the plaintiff has sent letters, spoken to parole officers and discussed this controversy to parole hearing officers at parole revocation proceedings, and not to mention the fact, that the plaintiff in 2004 has filed a "Federal Question" state post-conviction writ of habeas corpus directly to the 263rd Judicial District Harris County, Criminal Trial Court, the Harris County, District Attorney, and the Texas Court of Criminal Appeals, in another false criminal case (aggravated assault on a Houston police officer)

that the plaintiff was charged with in 1991, in Trial Court Cause No.

14-91-00196, challenging the <u>Geesa vs. State</u>, state   non-retroactive criminal

law, which directly addressed the intervening change in the state criminal

law, in which the plaintiff argued was completely retroactive, and that the

Winship and Ivan V. substantive Constitutional Standards together

mandated and authorized protection against conviction and discharge from

conviction, and the Texas Court of Criminal Appeals "prospective

application" of the Winship Standard is violating the Supemacy Clause of

the United States Constitution and Section One of the 14th Amenedment of

the United States Constitution, and depriving the plaintiff of 14th

Amendment Liberty and Substantive Due Process in violation of the 14th

Amendment of the United States Constitution, and in violation of the

plaintiff's 14th Amendment Constitutional Rights within the meaning of the

14th Amendment. And the Texas Court of criminal Appeals dismissed the

plaintiff's "Federal Question" Petition without a written order.

Therefore, in this case there is indeed a serious present controversy involving

Constitutionally significant and important federal issues.

The Texas Court of Criminal Appeals "prospective application" of the Winship

Standard <u>Geesa vs. State</u>, state criminal law, has not been challenged by its lower

courts in the past 27 years, and is not going to be, even where as here the lower courts know that the Ivan V., supra, "complete retroactive application of Winship Standard" is applicable and controlling.

The plaintiff moves the Federal District Court to exercise its federal Article III Power, as a Article III Court, and guard, enforce, protect, and vindicate the Winship Standard enforced and applied under the Geesa vs. State, state criminal law "prospectively," and provide the plaintiff with equity and comity, and due process and liberty and redress, legal relief, monetary compensation, damages, injunctive relief, mandamus relief, declaratory judgment relief, judgment, decree and orders, and the execution of the Federal District Courts judgments, decrees and orders, and ORDER the state defendants liable for causing the

On November 18th, 2016, the plaintiff has been subjected to the issuance of a false arrest warrant (Blue Warrant) by the Texas Criminal Justice Parole Director Pamela Theilke and Parole Officer Jessica Abbott, and on the same day falsely arrested and falsely charged with another crime, falsely imprisoned, falsely indicted, falsely prosecuted and falsely not afforded the 8th Amendment Constitutional right to make bail, by the Texas Criminal Justice Parole Director Pamela Theilke and Parole Officer Jessica Abbott, and other Parole Officers, and the plaintiff already suffering from mental and physical disabilities, and worried about the plaintiff's

sick sister, felt so threatened by being forced to remain unconstitutionally in the custody of the state, and subjected to these coercive measures of threats, menaces, physical detention, and fear of physical injury while confined in the County Jail, for over a full year, and the plaintiff's sister died on December 21st, 2017, as the plaintiff was being unconstitutionally taken through the parole revocation process, and the plaintiff was not told of the plaintiff's sister death by his family members until the day of the plaintiff's ultimate release January 6th, 2018, and the plaintiff claims that the parole officials actions were unconstitutional, to where they kept the plaintiff incarcerated in the county jail were without a law that supports their actions, were carried out pursuant to the Geesa vs. State, intervening state criminal law that deprives the plaintiff of 14th Amendment Due Process and Liberty, and had the Texas Court of Criminal Appeals enforced and applied that Constitutional Standard, completely retroactive, as mandated by the United States Supreme Court, the plaintiff would have had the opportunity to prove the plaintiff's innocence under the Winship Standard, and the 14th Amendment Due Process Clause would have protected the plaintiff from the plaintiff's 1991 conviction, and the plaintiff would not be on parole, today, for the parole officers to order the plaintiff's compliance, but the plaintiff would have been placed back at plaintiffs original position in 1991, given the opportunity to go back to work for Continental Airlines where the plaintiff was working at the time, resuming plaintiffs job   and family

responsibilities concerning plaintiffs obligations without State interference.

Plaintiff claims that <u>but for</u>, the Houston police officers wrongful actions, the state trial courts wrongful actions and the Texas Court of Criminal Appeals wrongful actions, the Texas state Attorney General wrongful actions, and all other state defendants wrongful actions where each knew or had reason to know of the the false state custody hold on plaintiff liberty by the Director of the Texas Parole Division would not have occurred.

IVAN V. vs. CITY OF NEW YORK, 92 S. Ct. 1951 (1972)

The United States Supreme Court held: in Ivan V.: "Where the major purpose of the new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth - finding function and so <u>raises serious questions about the accuracy of guilty verdicts in past trials</u>, the new rule has been given complete retroactive effect. Neither good - faith reliance by state or federal authorities on prior constitutional law or accepted practice, <u>nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.</u> *Williams v. United States, 401 U.S.U.S. 646, 653, 91 S.Ct.Ct. 1148, 1152, 28 L.Ed.L.Ed. 2d 388 (1971). See: Adams v. Illinois, 405 U.S.U.S. 278, 280, 92 S.Ct.Ct. 916, 918, 31 L.Ed.L.Ed. 2d 388 (1972); Roberts v. Russell, 392 U.S.U.S. 293, 295, 88 S.Ct.Ct. 1921, 1922, 20 L. Ed. 2d 1100 (1968).*

*Winship* is thus to be given complete retroactive effect.

The plaintiff argues that the major purpose of the Constitutional Standard, proof beyond a reasonable doubt burden of persuasion substantive Constitutional Standard announced in Winship, and enforced and applied within the matrix of the Geesa vs. State, state criminal law, was to overcome an aspect of a criminal trial that substantially impaired the truth - finding function, correct structural error, provide for a more accurate jury vardit, and correct factual errors, in the plaintiff's past criminal jury trial.

## DECLARATORY JUDGMENT REQUESTED

The plaintiff argues that in this case the Federal District Court has the judicial power as an Article III Court "to say what the law is." See: e.g., Marbury v. Madison, 1 Cranch 137,177, 2 L. Ed. 60 (1803).

And therefore, the plaintiff request that the Federal District Court "declare that the state defendants actions in participating in the enforcement and application of the Winsip Constitutional Substantive Standard "prospective application" upon the plaintiff, in conjunction with the parole laws is unconstitutional state action under color of law in violation of the plaintiff's 14th Amendment Constitutional Rights, and are in violation of 42 U.S.C. Section 1983 in this case, and that the state

defendants are liable to the plaintiff in damages in this case, and that the plaintiff is entitled to legal relief, equitable relief by way of a injunction enjoining further state action complained of herein.

## ARTICLE VI - THE UNITED STATES SUPREMACY CLAUSE

Article VI of the United States Constitution reads: This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding.

The plaintiff invokes the United States Supremacy Clause in this case

.
The Texas Court of Criminal Appeals has held: "When the court   decides cases " involving the United States Constitution then the court is   bound by United States Supreme Court case law interpreting it, and if Texas case law is in conflict, then the court is obligated to follow the United States United States Supreme Courts federal precedents. See: United States Constitution Article, VI, CL. 2.   See: E. G. Samudio v. State, 648 S. S.W. 2d 312, at 314, ( Tex. Cr. App. 1983 ).

## THE DOCTRINE OF "STARE DECISIS" UNDER
## THE UNITED STATES SUPREME COURT

The doctrine of "stare decisis"   ensures that the law will not change erratically, but

will develop in a principled and intelligible fashion. The doctrine permits society to

presume that "bedrock principles are founded in the law", rather than in the

proclivities of individuals, and thereby contributes to the integrity of our

Constitutional system of government, both in appearance and in fact" See:   Barnes

v. Coronado Oil and Gas Co., 285 U. S. 393, at 412, 52 S. Ct. 443, at 449, 76 L.

Ed. 815 ( 1932 ).


**GEESA vs. STATE, 820 S.W. 154, (Tex. Cr. App. Nov. 6th 1991)**

Plaintiff, incorporates it [The State Criminal Law] by reference herein, cited

as Geesa v. State, 820 S.W. 154, (Tex. Cr. App. Nov. 6th 1991).

The Geesa v. State, case reads as follows: Until today, "reasonable doubt"

has never been defined in Texas, either statutorily or in the charge to the

jury. See V.T.C.A., Penal Code, Section 2.01.   The following definitional

instruction on reasonable doubt combines the provisions of Section 2.01,

V.T.C.A., Penal Code and instructions used in the federal system: "all

persons are presumed to be innocent and no person may be convicted of an

offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant. It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecutions proof excludes all "reasonable doubt" concerning the defendants guilt. A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. In the event

you have a reasonable doubt as to the defendants guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "not guilty." See E.G., 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, Section 11.14; pattern jury instructions -- 5th Circuit United States Court of Appeals 1988; p. McClung, jury charges for criminal practice, at p. 6 (1990). We expressly adopt this instruction on "reasonable doubt" and hold that this instruction shall be submitted to the jury in all criminal cases, even in the absence of an objection or request by the State or the defendant, whether the evidence is circumstantial or direct. Id. 820 S.W. 2d at 162. [3] . . . Because the jury was not instructed in accordance with the second part of our holding today requiring a full definitional instruction on reasonable doubt, we must remand the Cause to the trial court for a new trial. Id. 820 S.W. 2d at 163. [4] (IV. Limited prospectivity) the Supreme Court in its recent opinion in Teague v. Lane, 489 U. S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), decided that " the question of whether a decision [announcing a new rule should] be given prospective or retroactive effect should faced at the time of [that] decision. Id. At 489 U. S. 288, 300, 109 S. Ct. 1060, 1069, 103 L. Ed. 2d 334, 349 (quoting Miskin, foreword: the high court, the Great Writ, and the due process of time and law, 79 Harv. L. Rev. 56, 64 (1965)). We agree

with this view and therefore address the issue of how our holding is to be applied --- prospectively or retroactively or some variation thereof. The Supreme Court over the past century has been periodically confronted with claims of retroactivity of new rules pronounced by the court in its capacity of judicial review. Two types of rules have been the focus of the court's retroactivity analysis --- rules of Constitutional criminal procedure and rules overruling precedent. See generally Annot. , Supreme Court Decisions --- Retroactivity, 22 l. Ed. 2d 821 (1969); Annot. , Retroactive or Prospective overruling, 14 L. Ed. 2d 992 (1965). The rules in the instant case are procedural rules overruling precedent. The rules are not of Constitutional dimension per se; rather, <u>the rules serve to implement the Constitutional requirement</u>  that a criminal conviction cannot stand "except upon proof beyond a reasonable doubt." See In Re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).   Although the rules obviously address the constitutionally required burden of proof in a criminal case, they do not change it. Neither rule increases or diminishes the requirement of In Re Winship, that a conviction cannot stand except upon proof beyond a reasonable doubt.   Id. 820 S.W. 2d at 163. [5] In Linkletter v. Walker, 381 U. S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), the Supreme Court fashioned a three -- pronged test for determining whether a new rule applies

retroactively: (1) the purpose of the rule; (2) the reliance placed upon the previous doctrine; and (3) the effect on the administration of justice of a retrospective application of the new rule. Id. See also Stovall v. Denno, 388 U. S. 293, 297, 87 S. Ct. 1967, 1970, 18 L. Ed. 2d 1199 (1967). In various circumstances, the court applied the three -- pronged test and denied full retroactivity to a   "new rule." This general approach is sometimes referred to as the " doctrine of nonretroactivity ". One variation of nonretroactivity is to apply the new rule to the parties in the case in which the rule is pronounced and all future cases, but not those pending on direct review or not yet final at the time of the decision, and not to those seeking collateral review of convictions which were final before the new rule was announced. We refer to this approach as " limited prospectivity. " most recently, however, in Griffith v. Kentucky, 479 U. S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), the court departed from its " doctrine of nonretroactivity " and applied the new rule of Batson v. Kentucky, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), retrospectively to all cases pending on direct federal and State review or not yet final at the time Batson was decided. In Teague v. Lane, 489 U. S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), the Supreme Court held that Batson does not apply retroactively on collateral review of convictions that become final before the Batson opinion was announced.

See also Allen v. Hardy, 478 U. S. 255, 106 S. Ct. 2878, 92 L. Ed. 2d 199

(1986).   These holdings respecting the retroactivity of the Batson rule adopt

the twofold approach suggested by justice Harlin in his dissent in Desist v.

United States, 394 U. S. 244, 256, 89 S. Ct. 1030, 1037, 22 L. Ed. 2d 248,

259 (1969), and represent the current viewpoint of the Supreme Court

respecting retroactivity -- a new rule will apply to all future cases, the case

announcing the rule, and all cases pending on direct review or not yet final,

but not to the collateral review cases which were final before the new rule

was announced. Under this view, habeas petitions should generally be

judged according to the law in effect at the time of the conviction; all other

cases are decided in accordance with the new rule. We refer to this approach

as " limited retroactivity." [6] That said, however, we must note that the

posture of the Supreme Court respecting the retroactivity of judicially --

announced rules -- is neither binding on this court nor mandated by the

Federal Constitution. As has been frequently recognized by the Supreme

Court, "the Constitution neither prohibits nor requires retrospective effect

[of a new rule] . . .   ' [T] he Federal Constitution has no voice upon the

subject'. "Linkletter v. Walker, 381 U. S. 618, 629, 85 S. Ct. 1731, 1737 -

1738, 14 L. Ed. 2d 601, 608 (1965). The decision whether to apply a new

rule retrospectively "is not a matter of Constitutional compulsion, but a

matter of judicial policy, to be determined by the court after weighing the merits and demerits of the particular case, by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive application will further or retard its operation." Annotation, retroactive or prospective overruling, 14 L. Ed. 2d 992 (1965) (paraphrasing Linkletter, 381 U. S. at 629, 85 S. Ct. at 1737 - 1738, 14 l. Ed. 2d at 608). Id. 820 S.W. 2d at 163 - 164. [7] Applying these basic principles to the new rules at issue compels the conclusion that "justice is best served by an application of limited prospectivity," i.e., <u>application of the rules will be limited to the case at bar and all cases tried hereafter</u> . . .. Retroactivity, of course, must be decided on a case - by - case basis . . . For the following reasons, we limit our use of the "limited prospectivity" approach to the case at bar . . . The rule of this case . . . was instituted on petition by the State, not at the defendant's request . . . No "actual inequity" results from denying a retrospective application of these new rules . . . <u>The rules being procedural in nature and not conferring any greater Constitutional protections than existed before, are not the type which typically militate in favor of a retrospective application</u> . . . <u>In the various cases already pending on direct review or not yet final,</u> juries were not instructed with a full definition of reasonable doubt. Thus, the purpose of correlating the

standard of review   with the courts instructions to the jury <u>cannot be</u>
<u>effected retroactively without requiring new trials in each of the</u>
<u>affected cases.   Id. 820 S.W. 2d at 165.</u>    Lastly, <u>this type of retrospective</u>
<u>application would unduly burden the administration of justice</u> . . For
these reasons; we adopt the new rules and apply them to the instant case
and all cases tried thereafter. Accordingly, the judgment of the court of
appeals is reversed and the Cause is remanded to the trial court for a
new trial. Id. 820 S.W. 2d at 165.

DISSENTING OPINION OF JUDGE CLITON

Note: Clinton, Judge, dissenting opinion, at 820 S. W. 2d at 173-174. "By word or
deed, the majority does not even attempt to show that it 'conflicts directly with
Jackson v. Virginia,' distorts the meaning of proof beyond a reasonable doubt, . . .
On that flawed premise it then proceeds to conjure up . . .   confusion in the Courts
of Appeals, Id, at 160; <u>confusion in the Application,</u>" Id, at 160; and finally,
<u>rejection by the Supreme Court and in other Jurisdictions</u>. Id, at 161.  . . Just now
there are divergent views among members of this Court about the proper method
for a reviewing Court to conduct an evidentiary analysis in making the "critical
inquiry" and in answering the "relevant question" prescribed in Jackson v. Virginia.
<u>We are unable to settle on the extent to which a reviewing Court may "impinge[ ]</u>

<u>upon 'jury' discretion" in "applying" the "familiar Standard" in a manner contemplated by the Supreme Court.</u>

Plaintiff argues that this Cause of Action includes a "claim of entitlement [a 14th Amendment Constitutional Right] due the plaintiff, enforced and applied by the Texas Court of Criminal Apeals under the state criminal law" while the plaintiff was on state direct appeal, which is the In re Winship, "The Due Process Clause protects the accused against conviction," 14th Amendment Constitutional Right, that the plaintiff is entitled to, but has been denied and deprived of in violation of the 14th Amendment of the United States Constitution. The plaintiff claims that the In re Winship, "The Due Process Clause protects the accused against conviction," 14th Amendment Constitutional Right, that the plaintiff is entitled to, is incorporated within the meaning of the 14th Amendment of the United States Constitution.

The plaintiff claims that the  14th Amendment Constitutional Right, requires a correct "interpretation and application of the Federal Law" to be enforced upon the plaintiff, and upon the state defendants, since the Texas Court of Criminal Appeals has failed, refused and neglected to do it, especially where in this case, the states highest criminal court has "incorporated the Federal Constitutional Standard" into